**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| DAWN CAYTON on behalf of P.V., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:14-CV-23-JEM |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Dawn Cayton on behalf of P.V. on January 9, 2014, and Plaintiff's Opening Brief [DE 21], filed by Dawn Cayton on behalf of P.V. on July 14, 2014. Dawn Cayton on behalf of P.V. requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On October 20, 2014, the Commissioner filed a response, and on November 17, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On October 14, 2010, Dawn Cayton filed an application for Supplemental Security Income ("SSI") with the U.S. Social Security Administration ("SSA") on behalf of her daughter P.V., a child under age 18, alleging that P.V. became disabled on November 16, 2009. The application was denied initially and upon reconsideration. On May 14, 2012, Administrative Law Judge ("ALJ") Mario G. Silva held a hearing at which Dawn Cayton and P.V. testified. On August 16, 2012, the ALJ issued a decision finding P.V. was not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Dawn Cayton's on behalf of P.V. request for review on November 14, 2013. *See* 20 C.F.R. § 404.981. Under 42 U.S.C. § 405(g), Dawn Cayton on behalf

of P.V. initiated this civil action for judicial review of the Commissioner's final decision.

The ALJ made the following findings under the required three-step analysis:

> 1. The claimant was born on January 15, 2005. Therefore, she was a preschooler on October 14, 2010, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since October 14, 2010, the application date (20 CFR 416.923(b) and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), borderline intellectual functioning (BIF), and minimal lesion nephrotic syndrome (20 CFR 416.924(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listing (20 CFR 416.924(d) and 416.926a).
>
> 6. The claimant has not been disabled, as defined in the Social Security Act, since October 14, 2010, the date the application was filed (20 CFR 416.924(a)).

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

P.V. was at all relevant times considered a child under age 18. P.V. was four years old on her alleged onset date and seven years old at the hearing. P.V. suffers from attention deficit hyperactivity disorder, borderline intellectual functioning, and minimal lesion nephrotic syndrome. By the time of the hearing, P.V. was in the first grade and enrolled in a special education program.

P.V.'s December 2011 to December 2012 Individual Education Plan ("IEP") stated she

would continue in the Mild Cognitive Disorder program. The IEP said P.V. worked below grade level in academic areas of reading, comprehension, decoding, spelling, and computation. The IEP also stated she had difficulty with attention, difficultly with concentration, and behavior problems in the classroom. This IEP also said she needed to have reminders to stay on task, there was concern she was too immature for her age and due to her areas of difficulty she would be impacted in her progress in a general education classroom. In January 2011, P.V.'s teacher Susan Shell filled out a teacher questionnaire that reported that P.V."function[ed] below grade level," was "unable to complete grade level assignments without support," "struggl[ed] academically, . . . [and] perform[ed] well below her peers." In February 2012, another of P.V.'s teachers completed a school activity questionnaire in which she said that P.V. "need[ed] severe intervention" and was unable to complete an assignment unless closely supervised.

In January 2011, Dr. Sharon Sacks, Ph.D., conducted a psychological assessment at the request of a state agency. Dr. Sacks stated that P.V. was "Borderline Intellectual Functioning," that her general cognitive ability was extremely low to borderline range, that her overall thinking and reasoning abilities were in the bottom 2% of children her age, and that she may experience great difficultly in keeping up with her peers.

In February 2012, school psychologist Megan Klein completed an Initial Multidisciplinary Evaluation for P.V. Klein stated that P.V. required redirection to keep her on task and wanted to stop the testing multiple times. Klein found P.V.'s I.Q. to be 64, in the extremely low range and in the bottom 1% of peers. Additionally, P.V.'s academic functioning was below her grade and her adaptive behavior was extremely low.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. A child is disabled if he or she has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). The SSA employs a three-step analysis to decide whether a child meets this definition. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings of Impairments contained in 20 CFR pt. 404, subpt. P, App. 1. *Id.*

To find an impairment functionally equivalent to one in the list, an ALJ must analyze its severity in six age-appropriate categories: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(a). The ALJ must find an "extreme" limitation in one category or a "marked" limitation in two categories. An "extreme" limitation occurs when the impairment interferes very seriously with claimant's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(I). A "marked" limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(I).

**ANALYSIS**

Plaintiff argues that the ALJ erred when he found that P.V. did not meet the requirements of Listing 112.05 (Intellectual Disability). The Commissioner argues that the ALJ's decision was supported by substantial evidence.

Listing 112.05 addresses Intellectual Disability of an individual under 18 years old. Listing 112.05 requires:

> Intellectual disability: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
> . . .
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;
> F. . . .
> 2. For children (age 3 to attainment of age 18), resulting in the satisfaction of 112.02B2a, and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.05

To meet the requirements of the Intellectual Disability Listing, an individual must meet the diagnostic description in the introduction paragraph and one of the six criteria that are listed in paragraphs A through F. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00 ("If an impairment satisfies the diagnostic description in the introductory paragraph and any one of the six sets of criteria, we will find that the child's impairment meets the listing."); *see also Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). The ALJ found that P.V. did not meet or medically equal the severity of the Listing because she did not have either subaverage general intellectual functioning or deficits in adaptive functioning. Since the ALJ found that P.V. did not meet the diagnostic description in the opening paragraph he did not continue his analysis as to whether P.V. met one of the six requirements in the Listing. The ALJ made several errors in his analysis of the evidence to the Listing the requirements.

First, it appears that the ALJ concluded that P.V. did not meet the subaverage general intellectual functioning because "the claimant has full-scale IQ scores of 64 and 68 but the consultative psychological examiners found that the claimant functioned in the borderline range." AR 40. The ALJ appears to be relying to Dr. Sacks' diagnostic impressions of "borderline intellectual functioning." AR 246. However, Dr. Sacks also stated that P.V.'s "general cognitive ability [was] extremely low to borderline;" that P.V. was "within the Extremely Low range of intellectual functioning;" that P.V.'s general cognitive abilities exceeded only 2% of children her age; and that P.V. "may experience great difficultly in keeping up with her peers in a wide variety of situations that require age-appropriate thinking and reasoning abilities." AR 245, AR 246. The ALJ also cited to the report of school psychologists Megan Klein in support of his conclusion that P.V. functioned in the borderline range. However, the Court was not able to locate a reference to

borderline functioning in this report, which opined that P.V.'s overall performance in cognitive abilities was "Extremely Low, and [was] equal to or higher than that of one percent of the children her age." AR 265. As a result, it is not apparent to the Court that Dr. Sacks' use of the term "borderline" means greater intelligence than subaverage, which is the threshold in the Listing. Moreover, the reports in this case indicate that P.V.'s cognitive abilities are far below subaverage. *See Scott v. Barnhart*, 297 F.3d 589, 591 (7th Cir. 2002) (The "examiners did not elucidate precisely the meaning of the term 'Borderline Range.' However, shortly after using this phrase, [the doctor] stated: 'His performance on the test overall yielded a General Cognitive Index of 50 which places him below the 1st percentile for children his age.'").

Second, the ALJ found that P.V. did not have the required deficits in adaptive functioning. In examining adaptive functioning in the adult intellectual disability context, the Seventh Circuit notes the "term denotes inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue,* 497 F.3d 708, 710 (7th Cir. 2007) (citing American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders,* 42 (4th ed. 2000)). No specific measurement method is required, nor has any circuit adopted a specific measurement standard. *Charette v. Astrue*, 508 F. App'x 551, 553 (7th Cir. 2013) ("[W]hen we earlier defined deficits in adaptive functioning [in *Novy*] as the 'inability to cope with the challenges of ordinary everyday life' we did not also require an ALJ to use a specific measurement method. . . [and] neither this circuit nor any other circuit court has recognized or established such a requirement."). The Court recognizes that an inability to cope with the challenges of ordinary everyday life would be different for a child than an adult.

The ALJ found that P.V. did not have deficits in adaptive functioning because she "only suffered mild cognitive disorder" and "had improvement in her academic and cognitive performance since being placed in education classes." AR 40. In addition, the ALJ cited to P.V.'s ability to care for her own personal needs with "some minor assistance" and do chores around the house, as well as her performance at the hearing, where she recited the alphabet "with only a few mistakes," could count to 20, knew her colors, said she could tell time and said she enjoyed reading books. AR 41. None of these findings are reflected by the record.

The ALJ emphasized that P.V.'s IEP states that she had "mild cognitive disability" and was improving. His reading of the IEP is questionable: no definition of mild cognitive disability is provided and it is not clear how P.V.'s cognitive abilities are related to the analysis of her adaptive functioning. In addition, the IEP also stated that P.V. was "impulsive and must learn to remain in her seat . . . [and] need[ed] to have reminders to stay on task when doing class work." AR 329. Likewise, the ALJ's consideration that P.V. takes care of her own personal needs with some "minor assistance" from her mother and does chores around the house is based on an over-reading of that report. The report does say P.V. cares of her personal needs but with the mother's help, including needing P.V.'s mother to place toothpaste on her toothbrush or sometimes having to remind P.V. many times to do her chores. P.V.'s hearing testimony also bears little relation to the ALJ's characterization of it. At the hearing the ALJ asked P.V. recite the alphabet. She initially answered "A-B-C-D-E-F-G-E-E-F-D" and stopped, then, when asked by the ALJ if she got confused, she stated, "They're all done." AR 75. The ALJ prompted her further, asking what comes after "D-E-F-G," to which P.V. answered "P." The ALJ corrected her and prompted her to continue letter by letter until she answered "K-M-N-O-P-Q-R-S-T-V." AR 76. This recitation is inconsistent with the ALJ's

report that P.V. was able to recite the alphabet "with only a few mistakes." On the whole the ALJ mischaracterized evidence and drew conclusions about P.V.'s functioning that are not support by the medical or testimonial evidence in the record.

In addition, the ALJ appeared to ignore all evidence in the record that reported on P.V.'s behavior in relation to her peers. Klein's report actually addressed "adaptive behavior functions," defined therein as "one's ability to gain skills in personal independence and social responsibility, given expectation of that person's culture and age group," AR 270, but the ALJ did not address Klein's findings. P.V.'s teachers, who would be able to compare P.V.'s adaptive behavior functions to her peers, reported that she "demonstrat[ed] extremely low adaptive skills." AR 270. Dr. Sacks, Klein, and P.V.'s IEP all noted that P.V. did not want to complete tasks, had to be redirected to tasks, needed repeated instructions, and would abruptly stop tasks. AR 228, AR 244, AR 264. P.V.'s teachers also stated she was unable to complete grade level assignments without support, was performing "well below" peers, "need[ed] severe intervention," and completed assignments only if closely supervised. AR 153, AR 159, AR 224. These reports all reflect deficits in adaptive behavior, as required by the Listing, which the ALJ did not address but rather appeared to substitute his own judgment as to what adaptive behaviors were appropriate for a child of that age. *Cf. Golden v. Barnhart*, No. 01 C 50333, 2002 WL 1559675 (N.D. Ill. July 16, 2002) (concluding that Plaintiff, a minor, did not have deficits in adaptive functioning where he had average attention span, average concentration, on-tasks behavior for his grade, could complete assignments on time, responded to change of routine in a classroom like his peers, was passing almost all regular education classes, did homework without promoting and completed chores).

Lastly, the ALJ's errors were not harmless because the record contains evidence indicating that P.V. could meet the remainder of the Listing requirements. The SSA Regulations for the Listings 112.05D and 112.05F explain that the ALJ "will assess the degree of functional limitation the additional impairment(s) imposes to determine if it causes more than minimal functional limitations, i.e., is a 'severe' impairment(s), as defined in § 416.924(c)." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.00. Since the ALJ found that P.V. has severe impairments of ADHD and minimal lesion nephrotic syndrome as defined in Section 416.924(c), along with BIF, the Court cannot conclude that the ALJ's analysis was harmless error.

The ALJ did not provide an adequate explanation for his conclusion that the evidence of P.V.'s abilities was insufficient to meet the Listing. Consequently, the Court remands this case on the issue of the ALJ's analysis under Listing 112.05 and directs the ALJ to consider all evidence in the record and build a logical bridge between the evidence and his conclusion, specifically addressing Listing 112.05 for intellectual disability for an individual under age 18.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Opening Brief [DE 21] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 19th day of March, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record